UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, et al.,<br><br>                                    Petitioners,<br><br>                    -v.-<br><br>MEGRANT CORP.,<br><br>                                    Respondent. | 21 Civ. 01336 (JHR)<br><br>OPINION & ORDER |

JENNIFER H. REARDEN, District Judge:

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds," and the trustees thereof, the "Trustees of the ERISA Funds"); the Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund," and the trustees thereof, the "Trustees of the Charity Fund"); the Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro"); and the New York City District Council of Carpenters (the "Union," and—together with the Trustees of the ERISA Funds, the Trustees of the Charity Fund, and CCA Metro—the "Funds," or "Petitioners") seek to confirm an arbitration award against Megrant Corp. ("Respondent") pursuant to section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185.  Petitioners also seek to recover post-judgment interest at the statutory rate provided by 28 U.S.C. § 1961 and attorneys' fees and costs incurred in bringing this action.  Respondent did not appear at the underlying arbitration hearing, has not responded to the instant Petition, and has not otherwise appeared before this

Court.  For the reasons set forth below, the motion is granted, but with a reduction in Petitioners'

request for attorneys' fees.

## I.    BACKGROUND[1]

### A.  Factual Background

The Trustees of the ERISA Funds are "employer and employee trustees of multiemployer

labor-management trust funds organized and operated in accordance with [the Employee

Retirement Income Security Act ("ERISA")]."  Pet. ¶ 4.  The Trustees of the Charity Fund

are trustees of "a charitable organization established under section 501(c)(3) of the Internal

Revenue Code, 26 U.S.C. § 501(c)(3)."  *Id.* ¶ 5.  CCA Metro "is a New York not-for-profit

corporation."  *Id.* ¶ 6.  The Union "is a labor organization that represents employees in an

industry affecting commerce . . . and is the certified bargaining representative for certain

employees of the Respondent."  *Id.* ¶ 7.  Respondent is "a domestic business corporation

incorporated and organized under the laws of the State of New York."  *Id.* ¶ 8.  It is "an

employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an

employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29

U.S.C. § 142."  *Id.*

On "August 16, 2002, [Respondent] executed an Administration Form with the Union."

*Id.* ¶ 9; *see* ECF No. 1-1 (the "Administration Form").  On "February 1, 2013, Respondent

executed an agreement with the United Brotherhood of Carpenters and Joiners of America."  *Id.*

---

[1] The facts set forth in this section are drawn from the Petition ("Pet."), *see* ECF No. 1; the
Administration Form; the International Agreement; the 2011-2017 Collective Bargaining
Agreement; the United Brotherhood of Carpenters International Signatories Roster as of October
28, 2020; the 2017-2021 Collective Bargaining Agreement; the Revised Statement of Policy for
Collection of Employer Contributions; the Notice of Arbitration Hearing (the "Notice of
Hearing"); the Opinion and Default Award of Arbitrator (the "Award"); and the History Bill for
the Court (the "V&A Invoice"), *see* ECF Nos. 1-1 to 1-9.

¶ 10; *see* ECF No. 1-2 (the "International Agreement").  The International Agreement states that "Welfare Funds, Pension Funds, Apprentice Training Funds and other monetary funds required by the Local Union or District Council Labor Agreement shall be paid in accordance with the Local Labor Agreement[.]"  International Agreement at Art. IX (1).  The Agreement also states that it "becomes effective March 4, 2013, and shall continue in effect unless terminated by no less than ninety (90) days' notice . . . in writing or on the NMAPC website at www.nmapc.org." *Id.* at Art. XXIX (1).  Petitioners aver that "respondent became bound to" local collective bargaining agreements ("CBAs"), Pet. ¶ 11, including the 2011-2017 Independent Millwright Agreement Between New York City Millwright Contractors Association and The District Council of New York City and Vicinity of the United Brotherhood Of Carpenters And Joiners Of America And Millwright Local 740 July 1, 2011 to June 30, 2017, ECF No. 1-3 (the "2011-2017 CBA"), and the Independent Millwright Agreement Between New York City Millwright Contractors Association and The District Council of New York City and Vicinity of the United Brotherhood Of Carpenters And Joiners Of America And Millwright Local 740 July 1, 2017 to June 30, 2021, ECF No. 1-5 (the "2017-2021 CBA").  Petitioners aver that "neither the United Brotherhood of Carpenters and Joiners of America nor Respondent provided written notice to terminate the International Agreement."  *Id.* ¶ 13.  "Respondent therefore . . . remains bound to the applicable local collective bargaining agreement."  *Id*.

The CBAs require Respondent, *inter alia*, to make "contributions to the Funds for all work performed within the trade and geographical jurisdiction of the Union."  Pet.¶ 16; 2011-2017 CBA at Art. I, § 1; 2017-2021 CBA at Art. XI § 1.  "[T]o ensure compliance with required benefit fund contributions," the CBAs require Respondent to "furnish its books and payroll records when requested by the Funds for the purposes of conducting an audit."  Pet. ¶ 17; 2011-2017 CBA at Art. XI, § 2(b); 2017-2021 CBA at Art. XI, § 2(b).

Under the CBAs, Respondent is also bound by the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy").  Pet. ¶¶ 18-20; 2011-2017 CBA at Art. XI, § 5; 2017-2021 CBA at Art. XI, § 5.  The Collection Policy establishes procedures governing unpaid contributions owed to the Funds by employers.  Those procedures provide, in relevant part, that, "in the event that an employer refuses to comply with the CBAs' audit procedures, the Funds 'shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period . . . A determination under this paragraph shall constitute presumptive evidence of delinquency.'"  Pet. ¶ 26 (quoting Collection Policy § IV (12)).

The Collection Policy and the CBAs provide that "legal action to collect delinquencies shall generally be in the form of arbitration."  *See* Collection Policy § VI (1); 2011-2017 CBA at Art. XI, § 13 ("Should any dispute or disagreement arise between the parties hereto, or between the Union and any signatory Employer concerning any claim arising from payment to the Fund of principle and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder[.]"); 2017-2021 CBA at Art. XI, § 13 (same); Pet. ¶ 21.  In any arbitration proceedings regarding delinquent contributions, "[t]he arbitrator shall have full and complete authority to . . . fashion an appropriate remedy including, but not limited to, monetary damages and all other remedies permitted by federal or state law . . . the costs of the arbitration, including fees to be paid to the arbitrator, shall be included in the award and shall be borne by the losing party."  2011-2017 CBA at Art. XI § 13(a); 2017-2021 CBA at Art. XI § 13(a).  To wit, "the Funds shall be entitled to collect, in addition to the delinquent contributions: (1) interest on the unpaid contributions at the prime rate of Citibank

4

plus 2%; (2) liquidated damages in the amount of 20% of the unpaid contributions; and (3) reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies." Collection Policy § V; 2011-2017 CBA at Art. § 13(a); 2017-201 CBA at Art. § 13(a).  "[T]he costs of the arbitration, including fees to be paid to the arbitrator shall be included in [t]he award and shall be borne by the losing party."  Pet. ¶ 22; 2011-2017 CBA at Art. XI § 13(a) (providing that "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by [the] submission and to fashion an appropriate remedy including, but not limited to, monetary damages"); 2017-2021 CBA at Art. XI § 13(a) (same).

Pursuant to the Collection Policy, "Petitioners requested an audit of Respondent covering the period January 1, 2017 through [February 16, 2021] in order to determine whether Respondent had remitted the proper amount of contributions to the Funds."  Pet. ¶ 27.  A "dispute arose between the parties," however, "when Respondent failed to provide its books and records for the purposes of conducting the audit," as required under the CBAs.  *Id.* ¶ 28; 2011-2017 CBA at Art. XI, § 2(b); 2017-2021 CBA at Art. XI, § 2(b).  In light of Respondent's "refus[al] to submit to an audit, the Funds conducted an estimated audit pursuant to the Collection Policy, which revealed that Respondent failed to remit contributions to the Funds in the principal amount of $248,880.24."  Pet. ¶ 29.

Accordingly, Petitioners initiated the underlying arbitration proceeding pursuant to the Collection Policy.  Pet.¶ 30; Award at 1.  On September 18, 2020, arbitrator Roger E. Maher (the "Arbitrator") issued a Notice of Hearing to the parties setting a hearing date of November 19, 2020.  *See id.*; Notice of Hearing.  The Notice of Hearing cautioned that "**[f]ailure to appear may result in a default award against you.**"  Notice of Hearing at 1 (emphasis added).

At the November 19hearing, no representative for Respondent appeared.  Award at 2. The Arbitrator first determined that Respondent "had legally sufficient notice of th[e] proceeding

and the claims against it," and given that there was "no appearance on behalf of [] Respondent or any request for an adjournment or an extension of time to appear," the Arbitrator "found the Respondent to be in default." *Id.* The Arbitrator then proceeded "to hear the testimony and take evidence on the claims of the Petitioners." *Id.*

At the end of the hearing, the Arbitrator rendered the Award in favor of Petitioners. Pet. ¶ 31; Award at 2-3. The Arbitrator found, based on "the substantial and credible evidence" presented by Petitioners, that Respondent was "in violation of the [CBAs] for its failure to permit [the] Funds' auditors to examine its [b]ooks & [r]ecords for the period of [January 1, 2017] through [November 21, 2020]." Award at 2; Pet. ¶ 32. The Arbitrator determined that Respondent was "obligated to pay the estimated amount of $248,880.24 dollars plus interest, liquidated damages, cost of the suit, attorney[s'] fees and the fee of the Arbitrator all in accordance with the terms and provisions of the [CBAs] and the [Collection Policy]." Award at 2; Pet. ¶ 32. The Arbitrator ordered Respondent to pay Petitioners $339,914.62, consisting of "(i) the estimated principal" of $248,880.24, (ii) interest thereon of $38,358.33, (iii) liquidated damages of $49,776.05, (iv) court costs of $400.00, (v) attorney's fee[s] of $1,500.00, and (vi) arbitrator's fee[s] of $1,000.00." Award at 3; Pet. ¶ 32. The Arbitrator further "found that interest of 5.25% will accrue on the aggregate amount of the Award from the date of the issuance of the Award." Award at 3; Pet. ¶ 33. Respondent has "failed to pay any portion of the Award." Pet. ¶ 34.

## B.  Procedural Background

In light of Respondent's refusal to comply with the Award, Petitioners initiated this action by filing a Petition to Confirm the Award, *see* Pet., which they promptly served on Respondent, *see* ECF Nos. 7, 8, 9.

6

Respondent has not responded to the Petition or otherwise appeared.  Thus, the unopposed Petition is ripe for the Court's consideration.[2]

## II.    LEGAL STANDARD

"Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."  *Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citation omitted).  The Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process."  *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).  "A court's review of an arbitration award is severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015) (quoting *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71-72 (2d Cir. 2012)).  "The federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes."  *N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997).  "Because the LMRA 'embodies a clear preference for the private resolution of labor disputes,' judicial review of arbitral awards in this context is 'among the most deferential in the law.'"  *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, &*

---

[2] "The Second Circuit Court of Appeals has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because '[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. PMM Cranes LLC*, No. 24 Civ. 3187 (JGK), 2024 WL 4388276, at *3 (S.D.N.Y. Oct. 3, 2024) (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).

*Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Blue Moon Health Mgmt. LLC*, No. 22 Civ. 1807 (KPF), 2022 WL 16578119, at *3 (S.D.N.Y. Oct. 31, 2022) (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532, 536 (2d Cir. 2016)).

"Confirmation of an arbitration award is thus generally 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Id.* at *3 (quoting *D.H. Blair & Co.*, 462 F.3d at 110). "The Court's task is not to reconsider the merits of the dispute; after all, the parties bargained for the arbitrator's view of the facts and the law." *Id.* (citing *Nat'l Football League Mgmt. Council*, 820 F.3d at 536). "Instead, [the court's] task is simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Nat'l Football League Mgmt. Council*, 820 F.3d at 537 (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

In cases such as this, where the "petition to confirm an arbitration award is unopposed, courts should generally treat 'the petition and accompanying record . . . as akin to a motion for summary judgment.'" *Treasury Two Tr. v. Teras BreakBulk Ocean Navigation Enter. LLC*, No. 20 Civ. 4089 (GHW), 2020 WL 4937468, at *2 (S.D.N.Y. Aug. 24, 2020) (quoting *D.H. Blair & Co.*, 462 F.3d at 109). "Under the familiar summary judgment standard, 'a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bailey Shipping, Ltd. v. Am. Bureau of Shipping*, 431 F. Supp. 3d 359, 364 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 56(a)).

"However, 'even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.'" *Mason Tenders Dist. Council of Greater N.Y. & Long Island v. Adalex Grp., Inc.*, No. 13 Civ.

8

764 (PAE), 2013 WL 5322371, at *3 (S.D.N.Y. Sept. 23, 2013) (alterations omitted) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)); *see Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."). Similarly, on an unopposed motion for confirmation of an arbitration award, a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Mason Tenders Dist. Council of Greater N.Y.*, 2013 WL 5322371, at *3 (quoting *D.H Blair & Co.*, 462 F.3d at 110).

## III.   DISCUSSION

### A.  Confirmation of Award

Petitioners have met their burden "to show that no genuine factual dispute exists." *Vt. Teddy Bear Co.*, 373 F.3d at 244. As an initial matter, "Petitioners have presented undisputed evidence that arbitration was appropriate in this case." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Jessica Rose Enters. Corp.*, No. 15 Civ. 9040 (RA), 2016 WL 6952345, at *3 (S.D.N.Y. Nov. 28, 2016). The CBAs provide, in relevant part, that "[s]hould any dispute or disagreement arise between the parties hereto, or between the Union and any signatory Employer, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute[.]" 2011-2017 CBA at Art. XI § 13(a); 2017-2021 CBA at Art. XI § 13(a) (same); *see also* Collection Policy § VI ¶ 1 ("[L]egal action to collect delinquencies shall generally be in the form of arbitration[.]"). The dispute here stemmed from Respondent's "fail[ure] to remit contributions to the Funds." Pet. ¶ 29. Thus, "[t]his dispute is plainly within the scope of the [CBAs'] arbitration

9

provision." *Jessica Rose Enters. Corp.*, 2016 WL 6952345, at *3; *see, e.g.*, *Treasury Two Tr.*, 2020 WL 4937468, at *2 (confirming arbitration award upon finding, *inter alia*, that the arbitration provision in the parties' contract constituted "undisputed evidence that the parties consented to arbitration for any dispute that might arise out of or in connection with their contract").

Moreover, "there is no dispute that the arbitrator acted within the scope of his authority." *Jessica Rose Enters. Corp.*, 2016 WL 6952345, at *3.  The CBAs provide that "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by the [Petitioners' submission] and to fashion an appropriate remedy including, but not limited to, monetary damages and all other remedies provided by federal or state law."  Pet. ¶ 22 (quoting 2011-2017 CBA at Art. XI § 13(a); 2017-2021 CBA at Art. XI § 13(a)).

Petitioners "have submitted undisputed evidence, including a notice of the arbitration hearing and the Award itself, demonstrating that the arbitrator complied with the CBA[s] by limiting his review to the issues raised by Petitioners—namely, Respondent's delinquent payments to the [Funds]." *Jessica Rose Enters. Corp.*, 2016 WL 6952345, at *3; *see* Notice of Hearing; Award at 2-3.  Petitioners "have also submitted undisputed evidence, including the CBA[s] and the Award, that the arbitrator's remedy was appropriate, for monetary damages, interest, fees, and costs are specifically identified as forms of relief available under the CBA[s]." *Jessica Rose Enters. Corp.*, 2016 WL 6952345, at *3; *see* 2011-2017 CBA at Art. XI § 13; 2017-2021 CBA at Art. XI § 13.  "The undisputed evidence thus establishes that the arbitrator did not exceed the scope of his authority in rendering the Award." *Jessica Rose Enters. Corp.*, 2016 WL 6952345, at *3; *Trs. of Mason Tenders Dist. Council Welfare Fund v. Sukhmany Constr., Inc.*, No. 15 Civ. 7200 (PAE), 2016 WL 3659925, at *3 (S.D.N.Y. July 1,

2016) (granting unopposed petition to confirm arbitration award after determining that "[t]he arbitrator acted within the scope of the authority granted him by the parties").

Finally, based on the Court's "severely limited" review of the undisputed evidence before it, *United Bhd. of Carpenters*, 804 F.3d at 274, the Court concludes "that the Award is proper," *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Regal USA Concrete Inc.*, No. 22 Civ. 8202 (JPC), 2023 WL 8644513, at *6 (S.D.N.Y. Aug. 9, 2023) ("*Regal USA Concrete Inc.*"). "Here there is no indication that the Arbitrator's award was procured through fraud or dishonesty or that the Arbitrator was acting in disregard of the CBA[s]." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 465 (S.D.N.Y. 2022). "Rather, the record indicates that the Arbitrator based his award on undisputed evidence that the Funds conducted an audit in accordance with the terms of the CBA[s] and determined that [Respondent] had been delinquent in its contributions to the [F]unds." *Id.*; *see* Award at 2. "The record further indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the [CBAs and the Collection Policy] and on undisputed testimony." *Architectural Metal Concept LLC*, 636 F. Supp. 3d at 465; *see* Award at 2-3. The Court therefore grants Petitioners' motion and confirms the Award of $339,914.62, plus pre-judgment interest at a rate of 5.25% per annum from the date of the award through the date of judgment in this action. *See Trs. of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Vrex Construction Inc.*, No. 21 Civ. 9408 (JMF), 2022 WL 19786, at *2 (S.D.N.Y. Jan. 3, 2022) (granting petitioners' "request for pre-judgment interest at a rate of 5.25 percent, the rate granted by the arbitrator"); *Waterside*

*Ocean Navigant Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984) (adopting a "presumption in favor of pre-judgment interest"); *Trs. of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Kraus Drapery Installation Inc.*, No. 21 Civ. 8369 (ALC), 2022 WL 1063738, at *2 (S.D.N.Y. Apr. 8, 2022) (awarding pre-judgment interest "at the rate granted by the arbitrator, 5.25 percent").

## B.  Attorneys' Fees and Costs

Petitioners also request $1,192.50 in attorneys' fees and $75.00 in costs arising from the instant litigation.  Pet. ¶¶ 43-44.  "Generally, 'in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award,' which section 301 of the LMRA does not provide." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Genrus Corp.*, No. 22 Civ. 4886 (JPC), 2022 WL 3536134, at *4 (S.D.N.Y. Aug. 18, 2022) (quoting *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)).  But "two independent bases support such an award here."  *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Land Cruising Properties Inc.*, No. 21 Civ. 7877 (KPF), 2022 WL 1125623, at *5 (S.D.N.Y. Apr. 15, 2022) ("*Land Cruising Properties, Inc.*").  "First, 'a contractual provision for the payment of attorneys' fees provides a basis to award them.'"  *Id.* (alterations omitted) (quoting *N.Y.C. Dist. Council of Carpenters v. JFD Sales Consulting Servs. Corp.*, No. 17 Civ. 3733 (LGS), 2017 WL 4736742, at *2 (S.D.N.Y. Oct. 19, 2017)).  "Second, a court may 'exercise its inherent equitable powers to award attorney's fees when opposing counsel acts in bad faith.'"  *Id.*  (quoting *N.Y.C. Dist. Council of Carpenters v.*

12

*Gen-Cap Indus., Inc.*, No. 11 Civ. 8425 (JMF), 2012 WL 2958265, at *5 (S.D.N.Y. July 20, 2012)).

Here, "the CBA[s] include[] a provision that allows the Funds to recover reasonable attorneys' fees and court costs upon prevailing in a confirmation action." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Formula 1 Builders, LLC*, No. 17 Civ. 1234 (GHW), 2017 WL 1483369, at *5 (S.D.N.Y. Apr. 25, 2017); *see* 2011-2017 CBA at Art. XI § 13(a) (providing that "[t]he cost of the arbitration, including fees to be paid to the arbitrator, shall be included in the award and shall be borne by the losing party"); 2017-2021 CBA at Art. XI § 13(a) (same). "Therefore, allowing the Funds to recover reasonable attorneys' fees and costs in the current action aligns with the parties' contractual expectations." *Formula 1 Builders, LLC*, 2017 WL 1483369, at *5 (holding that "an award of fees and costs [wa]s justified" because respondent had "enter[ed] into [a] CBA," under which "[respondent] agreed to submit to arbitration of disputes at the option of either party to the agreement").

Furthermore, Respondent has "act[ed] in bad faith." *N.Y.C. Dist. Council of Carpenters v. Gen-Cap Indus., Inc.*, No. 11 Civ. 8425 (JMF), 2012 WL 2958265, at *5 (S.D.N.Y. July 20, 2012). "A finding of bad faith may be made 'when a challenger refuses to abide by an arbitrator's decision without justification.'" *Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am. v. Prime Contractors, Inc.*, No. 22 Civ. 7085 (KPF), 2023 WL 3849101, at *4 (S.D.N.Y. June 6, 2023) (alterations and citation omitted); *accord Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) ("[C]ourts have routinely awarded attorneys' fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." (citation omitted) (collecting cases)). "Here, [Respondent] failed to participate in the arbitration proceeding, despite having been duly

notified of the hearing." *Formula 1 Builders, LLC*, 2017 WL 1483369, at *5. Following the arbitrator's decision that Respondent had violated its obligations under the CBAs, Respondent "failed to satisfy any portion of the award and has subsequently failed to oppose the instant petition to confirm the award." *Id.* "In so doing, [Respondent] has failed to offer any justification for its refusal to abide by the decision of the arbitrator," *id.*, and "[t]he Court therefore finds it appropriate to award [Petitioners] reasonable attorneys' fees and costs," *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Metroplex Serv. Grp., Inc.*, No. 18 Civ. 5889 (PAE), 2018 WL 4141034, at *5 (S.D.N.Y. Aug. 30, 2018) (awarding attorneys' fees where "[respondent], in violation of the CBAs, failed to produce the requested books and records for an audit" and "also failed to respond to [petitioners'] motion for summary judgment to confirm that award"); *Prime Contractors, Inc.*, 2023 WL 3849101, at *5 (determining an award of attorneys' fees was warranted where "Respondent ha[d] not appeared, and ha[d] failed to justify its refusals to appear at the arbitration hearing or to abide by the Award").

Having determined that an attorneys' fees award is appropriate, the Court next considers the reasonableness of the fees sought. "To determine an appropriate attorneys' fees award, the Court must assess" two factors: "the reasonableness of the attorney's hourly rate and the number of hours she billed at that rate." *Blue Moon Health Mgmt. LLC*, 2022 WL 16578119, at *5. To that end, "the petitioner must submit 'contemporaneous time records [that] specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *N.Y.C. & Vicinity Dist. Council of Carpenters* v. *Talico Contracting Inc.*, No. 19 Civ. 4287 (AT), 2021 WL 4429603, at *3 (S.D.N.Y. Sept. 27, 2021) (quoting *N.Y. St. Ass'n for Retarded Children, Inc.* v. *Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Counsel for Petitioners have submitted contemporaneous time records identifying the time spent and tasks performed litigating this

14

matter.  *See generally* V&A Invoice.  In total, counsel billed $1,192.50 for 4.2 hours of work.

Pet. ¶ 43; V&A Invoice at 2.  Specifically, counsel billed the time of (1) Adrianna R. Grancio, an

associate attorney who graduated from law school in 2016, at a rate of $275 per hour for 3.7

hours and (2) Nicole Marimon, a partner who graduated from law school in 2014, at a rate of

$350 per hour for .5 hours of work.  *See id.*; Pet. ¶¶ 39-40.[3]

Turning first to the number of hours billed, "the critical inquiry is whether, at the time the

work was performed, a reasonable attorney would have engaged in similar time

expenditures." *Architectural Metal Concept LLC*, 636 F. Supp. 3d at 467 (alterations and

citation omitted).  "The time records submitted by Petitioner[s]' counsel are sufficiently detailed

and establish that, among other tasks, counsel drafted the petition for confirmation, performed

research, and composed a summary judgment filing." *N.Y.C. & Vicinity Dist. Council of*

*Carpenters v. Plaza Constr. Grp., Inc.*, 16 Civ. 1115 (GHW), 2016 WL 3951187, at *2

(S.D.N.Y. July 19, 2016); *see also generally* V&A Invoice; Pet. ¶¶ 39-40.  The Court concludes

that 4.2 hours "is a reasonable number of hours worked given the description of the tasks

performed." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity*

*Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Safeway Installation*

*Corp.*, No. 19 Civ 10173 (VSB), 2023 WL 2596939, at *3 (S.D.N.Y. Mar. 22, 2023) ("In similar

---

[3] Although Petitioners state that V&A also "billed its legal assistants' time at the rate of $120 per hour for work performed in connection with this action," Pet. ¶ 41, the V&A Invoice does not include billing entries reflecting the time spent and the tasks performed by any individuals other than Ms. Grancio and Ms. Marimon.  *See generally* V&A Invoice.  "[A]bsent unusual circumstances, attorneys are required to submit contemporaneous records with their fee applications." *Trs. of the Dist. Council No. 9 Painting Indus. Ins. Fund v. City Newark Glass*, No. 23 Civ. 3303 (JPC), 2024 WL 2092003, at *3 n.1 (S.D.N.Y. May 9, 2024) (citing *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010)).  "Petitioners [have not] identified any exceptions to the contemporaneous records requirement." *Id.* (denying request for attorneys' fees where contemporaneous records were not submitted).  Thus, the Court does not include the legal assistants' time in calculating reasonable attorneys' fees.

actions to confirm an arbitration award in which the respondent has failed to answer the petition or otherwise appear, courts have found total billable hours in the single digits to be reasonable." (collecting cases)).

With respect to the proposed hourly rates, "[a] reasonable hourly rate is a rate 'in line with prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel. Prendergast* v. *Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (alterations omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "It is within the Court's discretion to reduce the requested rate when the Court finds the rate unreasonable in the relevant market." *Blue Moon Health Mgmt. LLC*, 2022 WL 16578119, at *6 (citation omitted). The Court has reviewed V&A's contemporaneous time records and compared them to the prevailing rates in the community. Beginning with Ms. Grancio, the Court does not approve her requested rate of $275 per hour for work performed in 2021 and reduces her rate to $250 per hour. "[C]ourts in this District [have] usually set her rate at $225 to $250 per hour." *Regal USA Concrete Inc.*, 2023 WL 8644513, at *6; *Land Cruising Props. Inc.*, 2022 WL 1125623, at *7 (awarding Ms. Grancio fees at a rate of $250 per hour); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. CEI Contractors Inc.*, No. 21 Civ. 7870 (JPC), 2022 WL 3225680, at *5 (S.D.N.Y. Aug. 10, 2022) (same).

With respect to Ms. Marimon, who has requested attorneys' fees at a rate of $350 per hour for work performed in 2021, the Court similarly does not approve that rate and reduces her rate to $325 per hour for work in this case. "[W]hen Ms. Marimon requested attorneys' fees at a rate of $350 per hour for work performed in 2020, several courts declined to award her that rate." *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr. Inc.*, No. 21 Civ.

16

4582 (KPF), 2021 WL 4868589, at *6-7 (S.D.N.Y. Oct. 18, 2021) (collecting cases and noting that her work "warrant[ed] a rate of $325 per hour"); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Innovation Designs Inc.*, No. 21 Civ. 2801 (KPF), 2021 WL 4869951, at *6 (S.D.N.Y. Oct. 18, 2021) (same).

Petitioners also seek costs. "Courts in this Circuit will generally grant 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Metroplex Serv. Grp., Inc.*, 2018 WL 4141034, at *6 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). The $75.00 requested by Petitioners consists primarily of service and court fees, which courts regularly permit. *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Rashel Constr. Corp.*, No. 22 Civ. 9854 (KPF), 2023 WL 3849103, at *8 (S.D.N.Y. June 6, 2023) ("find[ing] Petitioners' request for $164.14 in costs [related to "postage and service fees"] to be reasonable"); *see also, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Mahi Painting, Inc.*, No. 22 Civ. 6496 (GHW), 2022 WL 7584364, at *6 (S.D.N.Y. Oct. 13, 2022) (granting "the reimbursement of $181.10 in court costs resulting from serving [respondent] with the petition to confirm the arbitration award and court fees").

Accordingly, Petitioners' request for attorneys' fees and costs is granted, but at the reduced rate of $250 per hour for Ms. Grancio's work (3.7 hours) and $350 per hour for Ms. Merimon's work (0.5 hours), for a total of $1,100.00 in attorneys' fees, as well as $75.00 in costs.

17

## C. Post-Judgment Interest

Finally, Petitioners seek post-judgment interest. Pet. ¶ 45(4). Pursuant to 28 U.S.C. § 1961, "[s]uch interest 'shall be allowed on any money judgment in a civil case recovered in a district court[,] at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Metroplex Serv. Grp., Inc.*, 2018 WL 4141034, at *6 (alterations omitted) (quoting 28 U.S.C. § 1961(a)). The "'award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered,' and 'awards of post-judgment interest under § 1961 apply to actions to confirm arbitration awards.'" *Rashel Constr. Corp.*, 2023 WL 3849103, at *8 (alterations and citations omitted); *see, e.g.*, *Trs. for Mason Tenders Dist. Council Welfare Fund* v. *Euston St. Servs., Inc.*, No. 15 Civ. 6628 (GHW), 2016 WL 67730, at *2 (S.D.N.Y. Jan. 5, 2016) (awarding "post-judgment interest in action to confirm arbitration award") (citing *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100-01 (2d Cir. 2004)). Thus, the Court grants Petitioners' request for post-judgment interest.

18

## IV.   CONCLUSION

For the foregoing reasons, Petitioners' unopposed Petition to confirm the Award is

GRANTED.  The Clerk of Court is directed to enter judgment in favor of Petitioners, consisting

of (i) the arbitration award of $339,914.62, plus pre-judgment interest calculated at 5.25% per

annum from November 21, 2020 through entry of this Judgment;; (ii) $1,100.00 in attorneys'

fees and $75.00 in costs related to bringing this action; and (iii) post-judgment interest on the

entire amount of the judgment, which shall accrue at the statutory rate pursuant to 28 U.S.C. §

1961.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  January 30, 2026
New York, New York

_____
JENNIFER H. REARDEN
United States District Judge

19